FREEMAN, et ux. *v.* STATE

No. 39973 March 5, 1956 85 So. 2d 818

*D. Gary Sutherland,* Hattiesburg, for appellants.

*J. R. Griffith,* Asst. Atty. Gen., Jackson, for appellee.

Roberds, P. J.

On December 20, 1952, temporary injunctions issued to P. D. Freeman and his wife Gladys Freeman restraining them from possessing, or selling, intoxicating liquors at their home in Forrest County, Mississippi. The decrees expressly stated that a violation of the injunctions would constitute a contempt of court. Mr. and Mrs. Freeman were duly served with copies of the injunctions.

On September 18, 1953, the injunctions were made permanent. The decrees found and adjudicated that the home of said parties, by virtue of the possession and sale thereat of intoxicating liquors, had become a common nuisance, and enjoined the parties from possessing, or selling, intoxicants at said premises, as well as else where in Mississippi, and informed them that a violation of the injunctions would be a contempt of court, and would subject them to punishment for such contempt. The parties were served with copies of the decrees and the injunctions. All of the foregoing proceedings were had pursuant to, and by virtue of the powers conferred by, Section 2646 of the Mississippi Code of 1942.

The State, by the bill filed herein August 3, 1954, set up the foregoing facts and proceedings, and further

charged that at various times, and especially on April 17, 1954, Mr. and Mrs. Freeman had violated the said injunctions by unlawfully possessing and selling at their home intoxicating liquors, and were subject to fine and imprisonment for such violations.

Respondents, by their answers, denied that they had violated said injunctions and denied they were in contempt of court.

The chancellor, by decree dated September 27, 1954, found and adjudicated the respondents in contempt of court, and fined each $1,500.00, and sentenced each to serve six months in jail.

From that decree respondents appeal to this Court. Their principal contention is that the evidence is insufficient to prove that they had possessed, or sold, whiskey, at their home. Specifically, they say the proof is insufficient to identify Mrs. Freeman as the person from whom the witnesses bought whiskey on April 17, 1954, as claimed by the State, and that there is no proof that Mr. Freeman had anything to do with such sale, or the possession of whiskey at their home.

On the question of identity of Mrs. Freeman, this, in substance, is the evidence: W. C. Harpole and M. E. Sallis testified that they were special investigators for the office of the Attorney General of Mississippi, and that between 10 and 11 o'clock on the morning of April 17, 1954, they went to the home of Mr. and Mrs. Freeman in an automobile. They stopped in front and blew the automobile horn; that a lady came out and asked what they wanted; they informed her they wanted to purchase a half pint of Old Crow Whiskey, and she replied she had that brand for sale. She then went into the house and ''immediately'' returned with the bottle of whiskey, for which they paid her $2.00; that they then drove away. The whiskey was exhibited to the jury. On the identity of the woman who sold them the whiskey they pointed to Mrs. Freeman who was sitting

in the courtroom. They were pressed on cross-examination as to whether they were positive. They said they "believed" Mrs. Freeman to be the person; that this was their best judgment; they described the woman who sold them the whiskey as to size, weight, etc. They said she had gold teeth in front. Sallis said that during the trial he had noticed that Mrs. Freeman did have gold teeth in front. Both Harpole and Sallis were asked by the prosecution to look at Mrs. Freeman's teeth, but she refused to open her mouth for that inspection, and the court very properly refrained from ordering her to do so. Mrs. Freeman did not take the stand.

.The writs of injunction had described the Freeman home in these words: "Those premises known as the home of P. D. Freeman and further described as beginning at the northwest corner of the northwest quarter, south 210 feet, east 1111 feet, south 420 feet, east 209 feet, north 630 feet, west 1320 feet to beginning, all in Section 27, Township 4 North, Range 13 West, Forrest County, Mississippi". It was shown without dispute that this was the property to which Harpole and Sallis went and at which they bought the whiskey. It was not contradicted that this was the home of Mr. and Mrs. Freeman. The title to the property appears to have been in Mrs. Freeman.

The proof further shows that P. D. Freeman and Gladys Freeman were issued retail liquor dealer's permits by the Internal Revenue Department of the Federal Government, for which they duly paid the tax, authorizing them to engage in the business of retail liquor dealers, from July 1952 to July 1954, describing in general terms, the place at which such business might be carried on, which premises, so generally described, appear to be applicable to the home of appellants and to be the property described in the injunction writs. The first injunctions issued December 20, 1952. Defendants introduced no testimony. There is nothing to contradict the

natural and reasonable conclusions the chancellor had a
right to draw from this uncontradicted testimony of the
State. We think the testimony is amply sufficient to
justify the conclusion that Mrs. Freeman did sell to
Harpole and Sallis the whiskey on April 17, 1954. She
was in the courtroom in the sight and presence of the
chancellor. The witnesses described her and the chan-
cellor was in position to apply that description to her
physical appearance before him. There is no other Mis-
sissippi case exactly like this on its facts. Indeed, there
are no two cases anywhere exactly the same on their
facts. However, the facts and conclusions drawn there-
from in Murphy v. State, 202 Miss. 890, 32 So. 2d 875,
have some bearing upon the question of proof of identity
here. We think the finding of the cháncellor that Mrs.
Freeman sold the whiskey and that she was engaged in
the business of selling whiskey at her home is justified
from the testimony. But it is urged that if that be true
as to Mrs. Freeman there is no proof to show that Mr.
Freeman had violated the whiskey laws of this State.
The foregoing evidence is relevant and has much bear-
ing upon that question. That observation is especially
applicable to the effect of the possession by Mr. Free-
man of the federal retail liquor dealer's stamp. That
was issued to both Mr. and Mrs. Freeman and authorized
both to engage in the retail sale of whiskey at their
home after the issuance of the injunction and contrary
to its provisions.

The statute prohibits not alone the unlawful
sale of whiskey but its unlawful possession. This whis-
key came from the residence and home of Mr. and Mrs.
Freeman. It is yet the law that in legal contemplation
the husband is the head of the household and in control
and possession of the home. Wylie v. State, 151 Miss.
897, 119 So. 825; Garland v. State, 165 Miss. 136, 146
So. 637; Williamson v. State, 191 Miss. 643, 4 So. 2d
220; Quick v. State, 192 Miss. 782, 7 So. 2d 887; Ratliff

v. State, 199 Miss. 866, 26 So. 2d 69. Mrs. Freeman sold the whiskey. It was in the home. The statute condemns both the sale and the possession. Perhaps the most charitable view as to the husband is to say that he and his wife were in the joint possession of the whiskey. Wylie v. State, supra.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.